IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

MAY 3 1 2005

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| NATHANIEL A. WINTERS | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-4528 |
| | § | |
| STERLING COLLISION CENTERS, INC. | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

### DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO
### MOTION TO SEVER AND TO TRANSFER PLAINTIFF'S CLASS CLAIMS

In response to Plaintiff's Motion for Notice, Sterling argued that it is premature for
Plaintiff to seek conditional certification of a class before conducting any discovery. Sterling
also moved to transfer all class-related claims and to consolidate them with *Yi et al. v. Sterling
Collision Centers, Inc.*, a case pending in the Northern District of Illinois that raises allegations
identical to the ones made by plaintiff in this action. Plaintiff's brief in opposition to Sterling's
motion to sever and to transfer demonstrates why class notice is premature in this case and
transfer of the class-related claims to the Northern District of Illinois is the prudent course of
action.

First, Winters' contention that his lawsuit seeks a class different from the one sought in
the *Yi* case is incorrect and reveals a misunderstanding of Sterling's business operations. For
example, Winters contends that he seeks to represent "metal technician," while Yi seeks to
represent "body technician." In fact, these two titles describe the same position. Likewise, his
brief reflects a misunderstanding that a "prepper," whom both he and Yi seek to represent, is a
technician with limited experience, or that "porters," and "detailers" are nonexempt positions

excluded by definition from the class that both he and Yi seek to represent. In short, Winters'

claim that the plaintiffs in the *Yi* litigation seek to represent different exempt employees than he

does seeks to represent is factually incorrect.

Plaintiff also is wrong in his contention that *Yates v. Wal-Mart Stores, Inc.*, 58 F. Supp. 2d

1217, 1218 (D. Colo. 1999), is inconsistent with the first-to-file rule. *Yates* did not involve two

cases filed in different courts, and thus is irrelevant to the first-to-file rule.

Given the obviously identical claims and classes in *Winters* and *Yi*, Winters grossly

underestimates the complexity, waste of judicial resources, and risk of conflict of conflicting or

competing judgments that arise from having two collective actions in different judicial districts

managed by different judges. The first-to-file rule was designed to address this situation and it

makes good sense to apply it here. This is especially true because the parties in *Yi* have now

stipulated to the issuance of notice to class members.

## 1. The Class that Yi seeks to represent is virtually identical to the class that Winters seeks to represent.

Mr. Winters claims that the first-to-file rule is inapplicable because the *Yi* and *Winters*

litigations are not substantially similar. Specifically, Mr. Winters claims that the class that he

seeks to represent is "more extensive" than the putative class in *Yi*, and that if his case were

consolidated with the *Yi* litigation body technicians, preppers, porters and detailers "would not be

represented at all." (Docket Entry No. 21, Plaintiff's Response and Opposition to Defendant's

Motion to Sever and to Transfer Plaintiff's Class Claims at 6.) These contentions are incorrect

for two, independently sufficient reasons.

First, Mr. Winters' argument that body technicians, preppers, porters and detailers are

included in his putative class but not in the putative class in *Yi* is a semantic difference, but not a

material one. This claim merely reflects Mr. Winters's lack of familiarity with the terminology

2

used by Sterling. The putative class in the *Yi* litigation includes "metal technicians" whereas the putative class in this case includes "body technicians." These are just two different names for the same position. (Ex. A, Second Declaration of Timothy S. Swift at ¶ 3.)

Likewise, Mr. Winters' assertion that his putative class includes "preppers," but that workers with that job title would not be represented in the *Yi* litigation, is also immaterial. Preppers, in fact, are just entry level technicians who are embraced within the job classifications for metal/body technicians and paint/refinish technicians. (*Id.* at ¶ 4.)

Finally, Mr. Winters defines his class as including "porters, and detailers . . . who claim that they were misclassified as exempt from overtime compensation . . . ." (Docket Entry No. 1, Plaintiff's Original Complaint, ¶ 1.) Porters and detailers, however, are paid by the hour and have not been classified as exempt (Ex. A, Second Declaration of Timothy S. Swift at ¶ 6), and therefore, by definition, cannot be members of the putative class. Accordingly, Mr. Winters's claim that the putative class that he seeks to represent is "more extensive" or different from the putative class in the *Yi* litigation is simply wrong.

Second, Mr. Winters is equally mistaken in the view that a transfer of the collective action allegations pursuant to the first-to-file rule would somehow leave certain employees unrepresented. (Docket Entry No. 21, Plaintiff's Response and Opposition to Defendant's Motion to Sever and to Transfer Plaintiff's Class Claims at 6.) Sterling has asked the Court to transfer the class allegations, not strike them or dismiss them. A transfer in no way leaves anyone

"unrepresented."[1] Instead, the collective action aspects of the *Winters* case would proceed in the Northern District of Illinois before the judge presiding over the *Yi* litigation.

## 2. The *Yates* decision is not inconsistent with the first-to-file rule.

Mr. Winters cites *Yates v. Wal-Mart Stores, Inc.*, 58 F. Supp. 2d 1217, 1218 (D. Colo. 1999), for the proposition that the Fair Labor Standards Act ("FLSA") allows the maintenance of "a second, or even multiple, collective action(s)." (Docket Entry No. 21, Plaintiff's Response and Opposition to Defendant's Motion to Sever and to Transfer Plaintiff's Class Claims at 2.) That observation is irrelevant to the first-to-file rule.

Mr. Winters asserts that Sterling argues that the FLSA does not allow the maintenance of a second collective action. Sterling never made such an argument. Instead, Sterling demonstrated that the collective action allegations made by Mr. Winters should be managed by the court presiding over the *Yi* litigation rather than have two different courts manage substantially identical litigation.

The ruling in *Yates* – that a court can permit a second collective action – is irrelevant to the first-to-file rule. The first-to-file rule is utilized in substantially similar cases filed in two or more courts to prevent the different courts from expending resources and adjudicating claims that can resolved more efficiently, without the risk of conflicting rulings, in one proceeding. *Yates* involved two cases pending in the *same* court before the *same* judge and with the *same* attorneys.

---

[1] Mr. Winters also argues that the *Yi* litigation and *Winters* case are in different procedural postures, and that this alleged difference makes the first-to-file rule inapplicable. Plaintiff's Opposition at 5-6. Mr. Winters, however, cites no authority for his argument that perceived "procedural differences" make the first-to-file rule inoperative. Nor has he shown that the *Winters* case has progressed further than the *Yi* litigation. In *Yi* the statute of limitations have been tolled, protecting potential plaintiffs. In *Yi*, because plaintiffs' counsel followed the prudent course of seeking discovery before filing a motion for notice, counsel for Sterling is in the process of negotiating a stipulated notice in that litigation. Although Mr. Winters filed a motion for notice, he did not support that motion with any admissible evidence relevant to the application of the retail and service establishment exemption to Mr. Winters or to anyone else. Accordingly, the notion that the *Winters* case has progressed further than the *Yi* litigation is incorrect.

*See Yates v. Wal-Mart Stores, Inc.*, 58 F. Supp. 2d 1217, 1218 (D. Colo. 1999); *Presley v. Wal-Mart Stores, Inc.*, 58 F. Supp. 2d 1219 (D. Colo. 1999). These cases were eventually consolidated on appeal, and then reversed and remanded (although not on procedural grounds). *Archuleta v. Wal-Mart Stores, Inc.*, 395 F.3d 1177 (10th Cir. 2005). Because the same judge presided over both *Yates* and *Presley*, there was no risk of one court interfering with the affairs of another court, or any risk of duplicative litigation. *See West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-729 (5th Cir. 1985).

By transferring the class-related allegations to the Northern District of Illinois (which was filed several months before this case and in which the parties have already agreed to the issuance of notice, one court would decide how to coordinate the competing collective actions. That court may consolidate *Winters* into *Yi*, or allow it to proceed as a separate collective action with a different opt-in period. Regardless, *Yates v. Wal-Mart Stores* has no bearing on the first-to-file rule or Sterling's motion to sever and to transfer.

### 3. Winters underestimates the complexity and risk of having two collective actions pending in two different courts on the same claim.

Mr. Winters argues that allowing both the *Winters* and *Yi* litigation to proceed would not involve any "duplication of effort," arguing that "discovery regarding each plaintiff's pay records, the most pertinent and substantial part of discovery in an overtime case, will not be produced by Defendant twice, because each plaintiff will be an opt-in plaintiff in either the *Yi* case or the *Winters* case, but not in both." (Docket Entry No. 21, Plaintiff's Response and Opposition to Defendant's Motion to Sever and to Transfer Plaintiff's Class Claims at 3.) This argument is both wrong as a matter of fact and simply ignores some of the most serious and obvious consequences of having two competing cases and classes.

5

Even if this Court and the court in *Yi* coordinated the management of the two cases to preclude a plaintiff from joining both cases,[2] that would not eliminate the risk of duplicative discovery, waste of judicial resources, or conflicting decisions. Mr. Winters's argument ignores that some employees from one facility could opt in to one case, and other employees from that same facility could join the other case. Plaintiff's own proposal would result in a situation where employees working side-by-side could be involved in different cases – one in Texas, one in Illinois – involving the exact same claim. In that event, Sterling would be required to produce the same time and pay records for that facility to the attorneys in both *Winters* and *Yi*. Store managers could be required to give depositions on the same topics, with respect to the same claims, in two different proceedings. With 66 facilities, substantial duplication of effort is inevitable; the time and pay records for one employee cannot be extracted from the records of other employee at the same facility. Such duplicative effort can be avoided, or a least minimized, if both cases were managed by a single judge.

Further, having some employees from one facility join the *Yi* litigation and others join the *Winters* case creates the risk of different judgments for employees working at the same facility, under the same compensation plan. The two different courts could conceivably make inconsistent decisions concerning such issues as the validity of Sterling's reliance on the retail and service establishment exemption established by 29 U.S.C. § 207(i), or with respect to other elements of the merits of case. Employees working side-by-side could be subject to conflicting judgments. Accordingly, the first-to-file rule serves the interests of justice by ensuring that

---

[2]   Mr. Winters and the *Yi* plaintiffs continue to seek permission to send notice to the same potential plaintiffs. The notice sought in *Yi* and the notice requested by Mr. Winters does not preclude a person from opting into both cases. Mr. Winters does not explain how a person who joined the *Yi* litigation would be prevented from also joining the *Winters* case, or propose a mechanism for the two courts to coordinate the management of the related litigation.

Sterling is not subject to duplicative discovery or potentially inconsistent decisions, and ensures that the rulings of one Court do not interfere with the conduct of litigation in another Court.

### 4. Conclusion.

Sterling's response to Plaintiff's Motion for Notice and Expedited Discovery (Docket Entry No. 15)  and its Motion to Sever and Transfer Plaintiff's Class Claims (Docket Entry No. 17) demonstrated that the class allegations in the *Winters* case should be severed and transferred to the Northern District of Illinois. Plaintiff's Opposition to Motion to Sever and Transfer (Docket Entry No. 21) does not undermine any of the arguments supporting the motion to sever and to transfer. Mr. Winters did not demonstrate that his ability to file a second collective action in any way affects the first-to-file rule, or that he seeks to represent a class that differs in any significant way from the putative class in *Yi*.  Accordingly, Sterling requests that the Court deny Plaintiff's Motion for Notice to Potential Plaintiffs and Expedited Discovery (Docket Entry No. 13) and grant Sterling's Motion to Sever and to Transfer Plaintiff's Class Claims.

Respectfully submitted,

Fraser A. McAlpine
State Bar No. 13321300
Federal I.D. No. 3407
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, Texas 77002
(713) 220-5800 (telephone)
(713) 236-0822 (facsimile)

ATTORNEY-IN-CHARGE FOR DEFENDANT
STERLING COLLISION CENTERS, INC.

OF COUNSEL:

Kevin J. White
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, Texas 77002
(713) 220-5800 (telephone)
(713) 236-0822 (facsimile)

     and

Robert G. Lian, Jr.
Nathan J. Oleson
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036
(202) 887-4000 (telephone)
(202) 887-4288 (facsimile)

## CERTIFICATE OF SERVICE

I certify that on May 31, 2005, I served a true copy of

### DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO SEVER AND TO TRANSFER PLAINTIFF'S CLASS CLAIMS

by hand delivery on counsel for plaintiffs addressed as follows:

Salar Ali Ahmed
ALI S. AHMED, P.C.
Travis Tower
1301 Travis Street
Suite 1200
Houston, Texas 77002

Melissa Ann Moore
MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street
Suite 525
Houston, Texas 77002

Fraser A. McAlpine

9

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NATHANIEL A. WINTERS | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-4528 |
| | § | |
| STERLING COLLISION CENTERS, INC. | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

## DECLARATION OF TIMOTHY S. SWIFT

1.    I work for Sterling Collision Centers, Inc. ("Sterling"), as Regional Director, Houston
Region, Sterling Collision Centers, Inc.   My job duties and responsibilities include
overseeing eight stores in South Texas. The information set forth in this declaration is
based on my personal knowledge, or it is based on my review of corporate records
prepared and maintained by Sterling in the ordinary course of its business; those records
were prepared by persons having knowledge of the information presented in those
records, and by persons who prepared the records at or reasonably near the time of the
acts or events described in those records.

2.    As I stated in a previous declaration, Sterling operates automobile collision repair service
stores in various parts of the country.  At a typical Sterling facility, body technicians take
apart the damaged area of the vehicles, straighten damaged frames, and repair or replace
the vehicle's body parts.  Paint technicians (also known as Refinish Technicians) then
prepare and paint the vehicle's exterior upon completion of the body repair work.

3.    In some instances body technicians are called metal technicians. Indeed, their formal job
description (Attached as Exhibit 1) describes the "Position Title" as "Body/Metal

Technician." "Body technician" and "metal technician" are two terms for the same job classification.

4.    As shown by Exhibit 1, the job description for "Body/Metal Technician" has several grades representing different levels of experience.  The same is true for paint/refinish technicians. In some circumstances, introductory level technicians are called "preppers." These employees are also called "apprentices" in some facilities. There is not a separate job classification for "prepper" or "apprentice," but these terms are instead an indication of status within the technician job classification. The terms "prepper," and "apprentice" are commonly used in the body shop industry, and accordingly are used colloquially at Sterling even though they are not formal job titles within our system. A group that includes all of the body/metal technicians and all of the paint/refinish technicians would also include all of the employees described as "preppers" or "apprentices."

5.    In addition to the exempt body/metal and paint/refinish technicians, Sterling has employees who assist with the repair of vehicles, and who are paid on an hourly basis and who receive overtime compensation when they work in excess of 40 hours in a work week. Those workers are all within the job classification of "Detailer (Porter / Building Maintenance / Lot Attendant)." (See Exhibit 2.) Employees within that classification are responsible to pre-wash the exterior of damaged vehicle prior to the preparation of an estimate, and to prepare a repaired vehicle for return to the customer. In addition, as reflected by the job title, the employees in that classification move vehicles and do other general maintenance work.

6.    Employees within the "Detailer" classification have varying degrees of experience and ability. A "porter" is term used to describe a Detailer with a certain level of experience,

2

and not an official job classification. The term "porter" is commonly used in the body shop industry, and accordingly is used colloquially at Sterling even though it is not a formal job title within our system. Regardless, "detailers" and "porters" are officially classified as "Detailers," and are nonexempt employees who are paid hourly and paid overtime compensation when they work in excess of 40 hours in a work week.

7.   In accordance with 28 U.S.C. § 1746, I verify under penalty of perjury that the foregoing is true and correct.

_____
Timothy S. Swift


Executed on:  May _18_ , 2005

3

# EXHIBIT 1

**Sterling Autobody Centers**

*Job Profile Note: The attached serves as a general outline of major duties and responsibilities  It is not intended to be a delineation of every task. Variation of assignment within the same job title or job profile family can be expected based on the business needs of a given location as determined by the management team.*

**Position Title:**      **Body/Metal Technician**

**Purpose:**

To repair damaged vehicles at the highest quality levels based upon OEM and customer specifications, and within Sterling's operating practices for accuracy, timeliness, safety and teamwork.

**General Job Characteristics:**

➢ Sterling utilizes five levels of metal technician, allowing individuals to advance from the most junior to the most senior technician position based upon demonstrated skills, performance and experience.

➢ Technicians work as a team with responsibilities to include:

- ♦ Interacting with the damage analysis team in the event that previously unidentified damage is identified.
- ♦ Disassembly of damaged areas and labeling reusable components.
- ♦ Repairing or replacing damaged areas and components.
- ♦ Reassembly of repaired vehicle with properly fitted and finished component parts.
- ♦ Conducting quality repair audit for fit, finish and accuracy in preparation for delivery to our customer.

**Level 1 Technician:**

An Entry Level Technician has no industry specific experience or certification:

- Valid, state issued driver's license.
- High school diploma or GED preferred.
- General understanding and knowledge of basic automobile components and their operation.
- Ability to understand and use basic math concepts.
- Ability to use basic hand tools found in an automobile repair environment
- Ability to understand and use a "touch screen" personal computer station.
- Ability to understand and maintain the need for a safe, clean, organized work space and general work environment.
- Desire to work in a team based environment.

**Level 2 Technician:**

A Level 2 Technician is considered to be an Advance Entry Level with 6-12 months industry related work experience (including general automotive mechanics). Includes all Level 1 criteria, plus:

- Fundamental knowledge of automobile construction methods.
- Full understanding of the safe operation of basic compressed air and other electric powered tools.
- Basic R&I (removal and installation) body and mechanical component skills.
- General knowledge of basic automobile "damage diagnosis" work and terminology.
- Working knowledge and basic understanding of auto body mechanics and auto body repair techniques, methods and materials.
- Ability to check new or replacement component parts for proper application.
- Actively enrolled in ICAR and/or other industry related training programs.

**Level 3 Technicians:**

Level 3 Technicians have completed at least one series of basic industry related certification programs and have achieved all of the Level 1 and 2 criteria, plus:

- Full knowledge of damage diagnostic skills
- Understanding of the R&I (removal and installation) techniques and tools needed for most major automobile components.
- Basic panel straightening repair skills
- Understanding of the use and techniques required to apply body filler compounds.
- Full knowledge of basic "upper body" measuring techniques
- Capability to complete light, upper body structural repairs.
- Basic MIG welding skills (equipment operation, maintenance, and welding technique).
- Industry standard "simple mechanical component" repair skills.
- Basic skills associated with urethane bumper and component repairs.
- Ability to work effectively both independently and/or with a team of technicians.

**Level 4 Technicians:**

Level 4 Technicians have advanced skills gained from experience and industry related training or certification. Includes all Level 1, 2 and 3 criteria plus:

- ICAR training completed or in progress.
- ASE certified in auto body repair.
- Enrolled or participated in industry manufacturer or supplier training certification(s).
- Full understanding and ability to safely operate all major body repair and sheet metal repair hand tools.
- Experienced in the R&I (removal and installation) of most major automobile components
- Full understanding and ability to safely operate basic types of metal welders and cutters.
- Demonstrate highly acceptable MIG welding technique including panel welding cutting-in and replacement.

- Demonstrate advanced skill sets in the use of plastic body filler and metal bonding skills.
- Demonstrate advanced panel straightening skills.
- Demonstrate basic structural measuring and relating diagnostic skills.
- Demonstrate the correct techniques, equipment operation and structural tolerances needed in repairing "unibody" sub-frames and related component parts.

## Level 5 Technicians:

Level 5 Technicians are the most senior technical experts in the organization, fully knowledgeable in all aspects of collision repair and automotive component reconstruction. Includes all Level 1, 2, 3 and 4 criteria plus:

- Full knowledge of the use of all basic and complex compressed air and electric powered hand held and shop floor tools/equipment.
- Ability to diagnose problems and repairs as needed to OEM specifications.
- Demonstrate advanced knowledge and competency in structural diagnostic and repair skills.
- Successful completion of the full range of ICAR training programs in all related areas.
- ASE certification in auto body repair, painting and estimating and/or have five or more years experience in senior operating position within a reputable auto body repair facility.
- Advanced certified welding skill sets and techniques.
- Full knowledge of the industry standard concepts, applications and techniques as applied to automobile structure, as well as the measuring repair equipment used in the industry.
- Fully competent in industry manufacturers and suppliers recommended repair procedures.
- Maintain up to date knowledge and application of the latest technology associated with auto body repair technique, equipment and compounds.
- Demonstrate the ability to lead team efforts and mentor less experienced personnel.
- Full understanding of Sterling's operating practices and the economics for a successful Sterling store.

# EXHIBIT 2

## Sterling Autobody Centers

*Job Profile Note: The attached serves as a general outline of major duties and responsibilities. It is not intended to be a delineation of every task. Variation of assignment within the same job title or job profile family can be expected based on the business needs of a given location as determined by the management team.*

**Position Title:**          **Refinish Technician**

**Purpose:**

To repair damaged vehicles at the highest quality levels based upon OEM and customer specifications, and within Sterling's operating practices for accuracy, timeliness, safety and teamwork.

**Job Characteristics:**

➢ Sterling utilizes three levels of refinish technician, allowing individuals to advance from the most junior to the most senior technician position based upon demonstrated skills, performance and experience.

➢ Technicians work as a team with responsibilities to include:

♦ Preparing damaged areas or components using the proper techniques and compounds to ensure a "refinish ready" product.
♦ Completing refinish phase of repairs according to OEM and paint manufacturer specifications and within required timeframes.
♦ Interacting with the damage analysis team on vehicle or alternative part condition which could adversely impact the refinish product quality.
♦ Completing refinish detail (stripping, chip-guard, etc.) according to OEM specifications and within required timeframes.

**Level 1 Technicians:**

An Entry Level Refinish Technician has no industry specific experience or certification:

- Valid, state issued driver's license.
- High school diploma or GED preferred.
- General understanding and knowledge of basic automobile components and their operation.
- Ability to understand and use basic math concepts.
- Ability to use basic hand tools found in an automobile repair environment
- Ability to understand and use a "touch screen" personal computer station.
- Ability to understand and maintain the need for a safe, clean, organized work space and general work environment.
- Desire to work in a team based environment.

**Level 2 Technicians:**

A Level 2 Refinish Technician will generally have 3-5 years of refinish experience and is actively pursuing ICAR or other industry related refinish training and development. The Level 2 Refinish Technicians have achieved all of the criteria associated with a Level 1 plus:

- Fundamental knowledge of automobile construction methods.
- Full understanding of the safe operation of basic compressed air and other electric powered tools.
- Basic R&I (removal and installation) body and mechanical component knowledge.
- General knowledge of basic automobile "damage diagnosis" work and terminology.
- Basic understanding of auto body repair techniques, methods and materials.
- Actively enrolled in ICAR or related industry training course(s).
- Maintains current state of the art skill status (paint, applications, preparation) by attending paint manufacturer/supplier training programs.
- Ability to complete full range of quality control inspections on incoming body work.
- High level skill set and competency in all phases of body work preparation (base refinish, plastic, blends, etc.)

- Ability to check new or replacement component parts for proper application.
- Understanding of the use and application techniques needed for primers and sealers, corrosion protection and chip-guard.
- Ability to properly apply and use various masking products and block-sanding applications
- Ability to mix basic paint pigments and apply according to vendor specifications.
- Ability to coach less experienced team members.

## Level 3 Key Factors:

Level 3 Refinish Technicians have advanced skills and competencies gained from experience and industry related training or certification. Includes all Level 1 and 2 criteria plus:

- Work effectively independently and/or with a team of technicians.
- Full knowledge of damage diagnostic skills.
- Quality control skills to ensure consistency of end results.
- Understanding of the use and techniques required to apply body filler compounds.
- Has achieved ICAR and/or ASE certification in all applicable refinishing courses of study.
- Has achieved and maintains up to date certification from paint company suppliers, paint application tool vendors, etc.
- Superior product knowledge and management of refinish materials and techniques to achieve the highest level results.
- Full understanding of the paint management and delivery systems and ability to perform preventive maintenance within manufacturers specifications.
- Ability to train and direct efforts of less experienced personnel.